UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANGELO ANDRIANI,**<br><br>    Plaintiff,<br><br>  v.<br><br>**CITY OF HOBOKEN, THE HOBOKEN POLICE DEPARTMENT, MAYOR DAWN ZIMMER, POLICE CHIEF ANTHONY FALCO, POLICE CAPTAIN EDIMIRO GARCIA**<br><br>    Defendants. | Civil No. 11-6707<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**WILLIAM J. MARTINI, U.S.D.J.:**

Presently before the Court is a motion for summary judgment filed by Defendants City of Hoboken, the Hoboken Police Department, Mayor Dawn Zimmer, Police Chief Anthony Falco, and Police Captain Edimiro Garcia. *Pro se* Plaintiff Angelo Andriani has not filed opposition to the motion. For the reasons that follow, summary judgment will be **GRANTED** as to all Defendants.

I.   FACTUAL AND PROCEDURAL BACKGROUND

   A.   Prior Litigation Involving Plaintiff

*Pro se* Plaintiff Angelo Andriani ("Andriani") is a former lieutenant in the City of Hoboken Police Department. He is a white male who supervised Hispanic police officers

including Edwin Patoja, Mario Novo, George Fonseca, James Perez, and Cesar Olavarria (the "Pantoja Plaintiffs"). On October 24, 2007, the Pantoja Plaintiffs commenced a lawsuit in the District of New Jersey against the City of Hoboken and Andriani at Civ. No. 07-5113 (SRC) (the "2007 Lawsuit"). In the 2007 Lawsuit, the Pantoja Plaintiffs alleged that beginning in 2004, Andriani subjected them to a barrage of racist slurs and other extremely offensive conduct motivated by racial hatred, as evidenced by a number of specific examples. The Pantoja Plaintiffs further alleged that in spite of formally reporting Andriani's inappropriate behavior, no remedial action was taken against Andriani.

On December 27, 2007, Andriani filed an Answer to the Pantoja Plaintiffs' original pleading in the 2007 Lawsuit. He also asserted counterclaims against the Pantoja Plaintiffs for slander, libel, defamation, violation of privacy and malicious use of process. In an undated statement from Andriani,[1] he provides his version of the "Facts Leading Up

---

[1] The Court notes that the copy of the statement which Defendants supplied is missing the first page, that Defendants fail to identify who Andriani submitted the statement to, and that the document is not part of the public record in the 2007 Lawsuit. However, because Andriani has failed to oppose the present motion, the Court is compelled to accept Defendants assertion that Andriani submitted the statement after reviewing the allegations in the original pleading in the 2007 Lawsuit. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990) (where non-moving party fails to oppose summary judgment by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support") (citation omitted). And while the Court would prefer that Defendants provide more precise details about when and why this document was submitted, based on the substance of Andriani's statement, it is clear that it was filed in response to the allegations which are a part of the 2007 Lawsuit. It is also clear that in that statement, Andriani addresses many of the issues which are now the subject of claims he has asserted in his present *pro se* civil action.

to False Allegations/Federal Civil Lawsuit." (Undated Statement of Adriani 2, Cert. of Arnold Gerst, Ex. J, ECF No. 7.) In that document, Andriani asserts that it was in fact the Pantoja Plaintiffs and present Defendant Police Captain Edimiro Garcia who discriminated against him because he was white. Andriani's statement goes on to present a litany of issues he had with specific acts committed by those individuals from as early as December 18, 2003 to as recently as October 16, 2007. Tellingly, Andriani concludes his statement by noting that "It is clear to me that these Officers have failed to follow not only Department Orders, Rules and Regulations, but have committed crimes under the laws of the state of New Jersey and have violated my Civil Rights under the United States Constitution." (*Id.*)

Thereafter, via a letter dated February 28, 2008, Adriani received a preliminary notice of disciplinary action from the City of Hoboken ("Notice") indicating that he was being suspended without pay immediately and faced a disciplinary hearing and possible termination from the Hoboken Police Department based on twenty-one "Specifications" – specific instances of Andriani's alleged misbehavior which warranted termination – set forth in that notice. (Cert. of Arnold Gerst, Ex. O.) A number of the "Specifications" are identical to the allegations set forth by the Pantoja Plaintiffs in the 2007 Lawsuit.[2]

On September 17, 2008, the Pantoja Plaintiffs filed an Amended Complaint in the

---

[2] *See* Specifications 1, 2, 3, 8, 9, 10, 14. (Cert. of Arnold Gerst, Ex. O, ECF No. 7.)

2007 Lawsuit.[3]  In response to that filing, Andriani – who at that point was already suspended from the Hoboken Police Department and knew he was facing possible discharge based in part on his alleged behavior set forth in the 2007 Lawsuit  –  filed an Amended Answer on September 29, 2008 in which he asserted only the same five counterclaims that he previously asserted in his December 27, 2007 Answer.  Thereafter, the Pantoja Plaintiffs and Andriani engaged in extensive discovery to prepare for both the 2007 Lawsuit and Andriani's pending disciplinary hearing.  However, at no point in the course of litigation of the 2007 Lawsuit did Andriani file additional counterclaims asserting the civil rights violations that he alleged in his undated statement.

      Thereafter, on August 16, 2010, Arthur N. D'Italia, the hearing officer in Andriani's disciplinary action, formally recommended that Andriani be terminated from his position with the Hoboken Police Department.[4]  In arriving at that recommendation, D'Italia noted that after conducting eleven evidentiary hearings between November 26, 2008 and May 6, 2010, "the evidence is overwhelming that Andriani's use of disparaging racial epithets and gross insensitivity with respect to minorities renders him unfit for public service." (Aug. 16, 2010 Findings and Recommendation of Hr'g Officer 37, Cert. of Arnold Gerst, Ex. P.)

---

[3] For purposes of the present motion, that pleading is functionally identical to the Original Complaint.

[4] Based on the record before the Court, it appears that Andriani's termination was not effective until August 20, 2010.  (Cert. of Arnold Gerst, Ex. Q.)

On June 27, 2011 – almost a year after Andriani lost his position with the Hoboken Police Department – Judge Chesler dismissed the 2007 Lawsuit with prejudice, shortly after the parties indicated that they had settled the matter. Pursuant to the settlement, Andriani signed a Settlement Agreement and Release dated April 21, 2011 (the "Release"). Under the terms of the Release, Andriani:

> "hereby irrevocably, unconditionally, and forever releases, remits, and discharges the City of Hoboken, and its past and present employees, officials and representatives, and former Mayor David Robers and all of their respective heirs, successors and assigns jointly, and individually, from any and all counterclaims, crossclaims, liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities (collectively referred to as "Claims"), whether vested or contingent, that Andriani did assert or could have asserted with regard to the facts alleged in the Lawsuit as of the initial filing date of the Lawsuit [namely, October 24, 2007.]"

(Release 7-8, Cert. of Arnold Gerst, Ex. R.)

The Court wishes to be clear that Andriani lost his position with the Hoboken Police Department prior to signing the release and prior to dismissal of the 2007 Lawsuit. Nonetheless, and despite having signed the broad Release, on November 14, 2011, Andriani filed the present law suit at Civ. No. 11-6707 (WJM) (the "2011 Complaint"). In the present matter, Andriani asserts that "from about December 2005 until about August 10, 2010 Defendants engaged in a pattern and practice of discrimination and attendant retaliation against Plaintiff, unlawfully treating Plaintiff differently from similarly situated Hispanic/Latino police officers." All named Defendants in the 2011

5

Complaint are municipal entities and employees of Hoboken involved with the Hoboken Police Department. Andriani's Complaint asserts violations of: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e); (2) the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1; (3) 42 U.S.C. § 1981; and (4) 42 U.S.C. § 1983.

In response to that pleading, Defendants have collectively filed one motion for summary judgment, asserting, among other things, that Andriani's claims are barred under the doctrine of *res judicata*, or claim preclusion.[5] *U.S. v. Athlone Industries, Inc.*, 746 F.2d 977, 983 n. 4 (3d. Cir. 1984).

## II.  LEGAL ANALYSIS

### a.  Unopposed Summary Judgment Standard

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether summary judgment is

---

[5] More precisely, Defendants assert that Andriani's claims are barred by the Entire Controversy Doctrine ("ECD"), which is "New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). However, because the 2007 Lawsuit was litigated in federal court, the Court looks to federal common law principles of claim preclusion, and not the ECD. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir.1999); *Burlington Northern Railroad*, 63 F.3d at 1231 ("[W]e apply federal common law principles of issue preclusion since we are examining the issue preclusive effect of a prior federal court action"). Nevertheless, although Defendants have inartfully pled their claim preclusion defense, that failure does not destroy this Court's ability to consider the federal claim preclusion issue. *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997). *See also Walker v. Seldman*, 471 F.Supp.2d 106, 114 n. 12 (D.D.C. 2007) (noting that although some defendants had not yet moved for summary judgment on basis of *res judicata*, *sua sponte* dismissal on that basis was appropriate) (citing *Arizona v. California*, 530 U.S. 392, 412 (2000)).

proper, the Court must consider all facts and their reasonable inferences in the light most favorable to Andriani, the non-moving party. Moreover, Andriani's failure to respond to the motion does not automatically mean summary judgment is appropriate. *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

**b.     Claim Preclusion**

Under the doctrine of federal claim preclusion "a judgment entered in an action conclusively settles that action as to all matters that were or might have been litigated or adjudged therein." *Partmar Corp. v. Paramount Pictures Theaters Corp.*, 347 U.S. 89, 90-91 (1954). For the Court to grant summary judgment on this basis, it must be undisputed that there was: (1) a final judgment on the merits; (2) in a prior suit involving the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999); *see also Saudi v. Acomarit Maritimes Servs., S.A.*, 114 Fed.Appx. 449, 454 (3d Cir. 2004). When applying this test, the Court must focus on the central purpose of the doctrine, which is to require a plaintiff to present all claims arising out the same occurrence in a single suit. *U.S. v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984).

**i.     Final Judgment**

First, the Court finds that Andriani's signing of the Settlement Agreement which resulted in dismissal of the 2007 Lawsuit with prejudice is a "final judgment." *Weber v. Henderson*, 33 Fed. Appx. 610, 612 (3d Cir. 2002) ("final judgment" for claim preclusion

7

purposes occurred when district court approved settlement and dismissed the case). *See also Nobel v. Morchesky*, 697 F.2d 97, 102 n. 8 (3d Cir. 1982) *and Grimes v. Vitalink Comm. Corp.*, 17 F.3d 1553, 1557 (3d Cir. 1994).

### ii. Privity

Moreover, the Court finds that there is privity between the Defendants in the 2011 Complaint and the Pantoja Plaintiffs. First, all parties in both matters are public entities and employees involved with the operation of the Hoboken Police Department. *Collins et al. v. E.I. duPont de Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994) (privity "is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the *res judicata*"). Second, Andriani's Settlement Agreement, in which he discharged "the City of Hoboken, and its past and present employees, officials, and representatives, and former Mayor David Roberts and all of their respective heirs, successors and assigns" further supports the close relationship of the litigants in both actions. *Gambocz v. Yelensics*, 468 F.2d 837, 841 (3d Cir.1972) (claim preclusion can be invoked "against a plaintiff . . . where there is a close or significant relationship between successive defendants.").

### iii. Same Cause of Action

Finally, given "the essential similarity of the underlying events giving rise to the various legal claims," *G.E. v. Deutz A.G.*, 270 F.3d 144, 158 (3d Cir. 2001), the Court finds that the 2007 Lawsuit and the 2011 Complaint relate to the same set of underlying

events: namely, the behavior of Plaintiff and other members of the Hoboken Police Department which eventually resulted in Plaintiff being terminated from his position. Moreover, it is undisputed that in response to the allegations set forth in the 2007 Lawsuit, Andriani made a statement in which he claimed that the Pantoja Plaintiffs "committed crimes under the laws of the state of New Jersey and have violated my Civil Rights under the United States Constitution."  However, in spite of that apparent belief, Andriani failed allege any violations of those rights in the 2007 Lawsuit, even though the litigation in that matter focused on the actions and behavior Andriani and the Pantoja Plaintiffs while serving as officers of the Hoboken Police Department, and even though Andriani asserted various other counterclaims against those individuals.

     In short, the allegations made by Andriani in the 2011 Complaint stem from the set of underlying events were already extensively litigated through an administrative disciplinary action and a federal civil suit which resulted in a final judgment.  Under the standard set out by the Third Circuit, the 2007 Lawsuit and the 2011 Complaint are undeniably based on the same cause of action.  *See Churchill*, 183 F.3d at 195 (district court "properly concluded that the case involved the same cause of action because the underlying events in both cases are the same, as the acts complained of were the same, and the evidence at the trial would have been the same.") (quotations omitted).

     In light of the foregoing, the Court finds that, even when viewing all evidence in light most favorable to non-movant, Andriani's 2011 Complaint is barred under the

doctrine of claim preclusion.

### III.     CONCLUSION

For the reasons stated above, Officer Defendants' City of Hoboken, the Hoboken Police Department, Mayor Dawn Zimmer, Police Chief Anthony Falco and Police Captain Edimiro Garcia's motion for summary judgment is **GRANTED**.  An appropriate Order accompanies this Opinion.

s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 24, 2012**